IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENT YUNDT, M.D.; ANTHONY
HADDEN, M.D., and NORTHWEST
MEDICAL SPECIALISTS, LLC, dba
Northwest Brain and Spine,

        Plaintiffs,

        v.

AMSURG HOLDINGS, INC., a Delaware
corporation,

        Defendant.

Civ. No. 6:15-cv-01548-MC

OPINION AND ORDER

MCSHANE, Judge:

        Before the Court are cross motions to vacate (filed by plaintiffs Kent Yundt, M.D. and Anthony Hadden, M.D.) and confirm (filed by defendant AmSurg Holdings, Inc.) a July 5, 2016 Arbitration Award. The Court heard oral arguments on November 4, 2016. After careful consideration of the supporting and opposing memoranda, the arguments of counsel, and the relevant legal authority, the Court GRANTS the defendant's Motion to Confirm and DENIES the plaintiffs' Motion to Vacate.

1 – OPINION AND ORDER

# BACKGROUND[1]

In 2004, Drs. Yundt and Hadden formed Northwest Medical Sepcialists, LLC, dba Northwest Brain and Spine (NWBS) in Bend, Oregon. Drs. Yundt and Hadden are whole owners off NWBS.

In 1996, Bend Surgery Center, LLP was formed as an ambulatory surgery center (ASC). In 2011 or 2012, Drs. Yundt and Hadden purchased interests in Bend Surgery Center, LLP. In May 2014, the 43 physician partners of Bend Surgery Center, LLP approved a sale of the partnership to AmSurg.[2] In July 2014, AmSurg and the physician partners of Bend Surgery Center, LLP, including Drs. Yundt and Hadden, executed the Operating Agreement of Bend Surgery Center, LLC (BSC). In exchange for about $22 million, AmSurg obtained a 51% ownership interest in BSC, while each physician owner obtained a 1% interest in BSC. Drs. Yundt and Hadden admit signing the agreement. First Am. Compl., ¶ 27.

The agreement contains a Non-Compete Covenant:

8.2 Ownership and Investment Restrictions. No Owner of Affiliated Physician, nor any Affiliate of any Owner or Affiliated Physician shall:

> 8.2.1. have any direct or indirect ownership interest in, or manage, lease, develop or otherwise have any financial interest in any business or entity competing or planning to compete with the LLC (including, but not limited to, any ambulatory surgery center or any physician office in which surgical procedures are performed. . . within a twenty-five (25) mile radius of the [BSC].

In each case described in Sections 8.2.1 and 8.2.2 until the later of (i) five (5) years from the date of this Agreement, or (ii) two (2) years after such Owner (or with respect to an Affiliated Physician, the Owner with whom such Affiliated Physician is affiliated) ceases to be a Member of the LLC.

---

[1] Additional background information is found in this Court's November 24, 2015 Opinion granting AmSurg's motion to stay pending arbitration. *See* ECF No. 40.
[2] Amsurg owns several ASCs throughout the United States.

2 – OPINION AND ORDER

The agreement also contains an arbitration clause:

14.11 Arbitration. All disputes arising under this Agreement shall be resolved by binding arbitration pursuant to the rules of the American Health Lawyers Association Dispute Resolution Service ("AHLA") then pertaining. The arbitration proceedings shall be held in Denver, Colorado. The procedures for conducting discovery in connection with any such arbitration proceeding shall be determined by the mutual agreement of the Members party to the arbitration proceeding or, if such Members cannot agree, by the arbitrators. The arbitrators shall apply the substantive laws of the State of Tennessee and the United States.

In August 2014, Drs. Yundt and Hadden notified AmSurg of their plan to move NWBS to a larger office with an adjacent ASC.[3] Drs. Yundt and Hadden constructed a new ASC facility and NWBS moved into the new facility in April 2015.

In March 2015, BSC sent Drs. Yundt and Hadden a letter claiming the ASC facility would violate the Non-Compete Covenant. In May 2015, BSC and AmSurg sent Drs. Yundt and Hadden an Arbitration Demand for Interim and Permanent Injunctive Relief and Request for Expedited Proceedings.

After receiving AmSurg's arbitration demand, Drs. Yundt and Hadden filed the Complaint in this action in August 2015. The Complaint seeks declaratory and injunctive relief, alleging that AmSurg engages in anticompetitive and monopolistic practices in violation of the Sherman Antitrust Act. Amsurg moved to stay this action pending arbitration. After cross motions, this Court stayed plaintiffs' claims pending arbitration.

The parties then proceeded in arbitration. On April 13, 2016, the parties submitted a Joint Pretrial Hearing Order (JPHO) to the arbitration panel. Pursuant to a written order from the panel, the JPHO:

---

[3] The parties dispute whether this new facility is an ASC or whether it violates the Operating Agreement. The arbitration panel found for AmSurg on that issue.

3 – OPINION AND ORDER

>shall contain: (a) a recitation that the pleadings are amended to confirm to the Hearing Order and that the Hearing Order supplants the pleadings; (b) a short summary of the Claimant's theories; (c) a short summary of the Respondents' theories (no more than one page); (d) a statement of the issues and the relief sought; and (e) a summary of any anticipated evidentiary disputes.

ECF No. 47-11, 1.

In summarizing their theory, Drs. Yundt and Hadden focused solely on the BSC Operating Agreement's Non-Compete Covenant, omitting any arguments relating to their broad antitrust claims (raised in their federal complaint). Perhaps in anticipation of the issues currently before this Court, Drs. Yundt and Hadden inserted a footnote in the JHPO boldly stating that their omission of the antitrust claims in the JHPO did not "constitute a waiver" of those claims and related defenses. As the JHPO supplanted the pleadings in arbitration, and as Drs. Yundt and Hadden chose to omit any antitrust claims from the JHPO, the arbitration panel did not address any antitrust claims.

Per the arbitration clause in the Operating Agreement, the panel arbitrated under AHLA rules. The AHLA rulebook contains a clause regarding final decisions: "7.1 Deadline. An arbitrator must issue an award within 30 days after the hearing is closed unless the arbitrator and all parties agree to extend this deadline."

The parties filed their closing arguments, which effectively closed the hearing period, on May 31, 2016. On July 5, 2016—twenty four business days after the hearing period had closed—the panel signed its Decision and Order. For reasons unknown, the panel neither filed nor made available their Decision and Order until July 21, 2016—thirty six days after the hearing period had closed. The panel ruled largely in Amsurg's favor, prohibiting Drs. Yundt and Hadden from operating their ASC.

4 – OPINION AND ORDER

As noted, AmSurg moves to confirm the arbitration award while Drs. Yundt and Hadden move to vacate the award, arguing the panel refused to consider their antitrust claims and issued an untimely decision.[4]

## STANDARD OF REVIEW

Pursuant to the Federal Arbitration Act (FAA), a district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or if any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *United States Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010). Unless the reviewing district court determines that the arbitration award is subject to vacatur, modification, or correction under the limited instances above, the court must confirm the award. 9 U.S.C. § 9.

A district court's scope of review of an arbitral decision is "extremely limited" under the FAA. *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003). A district court may not review the merits of an arbitration decision, and parties seeking to vacate an award must demonstrate the panel's "manifest disregard of the law." *See Collins v. D.R. Horton, Inc.*, 505

---

[4] Drs. Yundt and Hadden's other argument, that the award is inconsistent, is meritless and warrants only a brief mention. The panel denied AmSurg's motion for interim injunctive relief because the doctors testified NWBS would not be operational before the panel's ultimate decision. By the time of the award, however, there was the ongoing threat of imminent harm upon the completion of NWBS. Additionally, AmSurg provided evidence on that threat of harm. Simply because the panel denied interim relief does not mean the award was inconsistent.

5 – OPINION AND ORDER

F.3d 874, 879 (9th Cir. 2007). That is, a party seeking to vacate an award must show more than the panel's mere error in interpreting or understanding the applicable law. *Id.*

## DISCUSSION

### I. The panel did not exceed its authority by issuing an untimely award.

Drs. Yundt and Hadden argue that because the panel issued its award past the thirty day deadline mandated by the AHLA, it exceeded its authority and the Court should vacate the award pursuant to 9 U.S.C. § 10(a)(4). AmSurg, on the other hand, argues the award was timely because it was finalized and signed by the panel on July 5, 2016—well within the thirty day deadline—despite the award not being made available to the parties until July 21, 2016.

Under AHLA Rule 7.1, the panel is required to issue an award within 30 days after the hearing has closed. Rule 1.4 states that in counting days, "'days' means business days, which do not include Saturdays, Sundays . . . or any other day on which the AHLA main office is closed."

The arbitration hearing closed when the parties submitted their closing briefs on May 31, 2016. The decision was signed twenty four business days later, on July 5, 2016, and was filed thirty six days after the hearing closed, on July 21, 2016.

AmSurg's argument that the award was "issued" on the date the award was signed, on July 5, 2016, does not comport with the word's plain meaning. Merriam-Webster defines "issue" as "the act of officially making something available or giving something to people to be used." Likewise, "issuance" is defined "the act of making something available or distributing something." The panel's decision was neither made available nor distributed to the parties until July 21, 2016, thirty six days after the hearing closed. The Panel's decision was untimely.

Despite the untimely decision, neither party objected until after the award was issued. A party that fails to object to an untimely arbitral award during the timeframe between when the

award should have been issued and when the award is actually issued has waived its right to object. 3 Commercial Arbitration § 115:2.50. Additionally, the party protesting the untimely award "must demonstrate prejudice caused by the arbitrator's delay." *Id.*

Across jurisdictions, arbitration awards are often upheld when a party fails to object to the delay before the award is actually issued. In *Lodge No. 725, Int'l Ass'n of Machinists v. Mooney Aircraft, Inc.*, 410 F.2d 681 (5th Cir. 1969), the Fifth Circuit directed the district court to confirm the untimely arbitration award, despite the arbitrator's forty one day delay in issuing it. The parties there attempted to call the arbitrator regarding the delayed award, but the court found that did not constitute a timely objection to the untimely award and that neither party objected until after the award was actually issued.

Similarly, the Eleventh Circuit refused to vacate an arbitration award on grounds that it was untimely by three days when a party raised the issue for the first time at the district court level. *See Davis v. Producers Agr. Ins. Co.*, 762 F.3d 1276 (11th Cir. 2014). In *Davis*, the court stated that it would not overturn an arbitrator's award where ". . . the losing party failed to object immediately upon the expiration of the deadline, especially where there has been no demonstration of any prejudice arising from delay." *Id.* at 1287–88.

The record here indicates that, prior to the doctors' argument here, neither party objected to the untimely arbitration award. In fact, on the final day of the arbitration hearing, the arbitrators discussed a possible delay in issuing an award: "Let's say we'll have it out to you in thirty days. We'll do our best. But if we're going to give you that long [to submit written closing argument] we may take it, too. I think we can work it out but it's summertime. You never know." Arb. Tr. 641. Neither party objected to this tentative delay. *Id.* Further, Drs. Yundt and Hadden have not alleged—and this Court cannot find—that they suffered any prejudice by the untimely

award. Because Drs. Yundt and Hadden did not timely object to the untimely award and because they suffered no prejudice in the delay, the panel did not exceed its authority in issuing a late award. Consequently, the panel's untimely award is no grounds for vacatur under 9 U.S.C. § 10(a)(4).

## II. The panel did not refuse to hear and consider antitrust evidence pertinent and material to controversy.

Drs. Yundt and Hadden also seek vacatur on grounds that the panel refused to hear and consider evidence pertinent and material to the controversy, i.e., their antitrust claims. A court may grant vacatur where arbitrators refuse to hear pertinent and material evidence under 9 U.S.C. § 10(a)(3).

Although Drs. Yundt and Hadden argue the panel refused to hear their antitrust claims, it is clear the doctors simply failed to present those claims to the panel and then, after losing a discovery dispute, simply abandoned those claims. Instead of bringing all antitrust claims from their federal complaint in arbitration, Drs. Yundt and Hadden deliberately chose to minimize their antitrust claims in arbitration. Drs. Yundt and Hadden's Amended Answer in arbiration briefly addressed the BSC Non-Compete Covenant in the Operating Agreement and that particular provision's "inten[t] to provide AmSurg the opportunity and the ability to unlawfully obtain and maintain a monopolistic presence in Central Oregon . . ." Resp. Am. Ans. ¶17. That is the only mention in the arbitration briefing of Drs. Yundt and Hadden's antitrust claims, and it narrowly focuses only on the BSC non-compete provision's ability to provide an opportunity to violate antitrust laws. Drs. Yundt and Hadden's arbitration brief completely lacks any allegations, present in their federal complaint, of AmSurg's larger antitrust or monopolistic schemes. That the antitrust claims changed between the federal pleadings and the arbitration pleadings should be no surprise to Drs. Yundt and Hadden. First, they deliberately made those

8 – OPINION AND ORDER

changes when filing the amended answer in arbitration. Second, this subject was hotly contested in arbitration.

The parties brought multiple discovery disputes regarding the scope of Drs. Yundt and Hadden's claims before the panel. AmSurg argued that although the doctors sought discovery regarding a "'monopolistic scheme' to control certain kinds of medical services delivery in the 'Central Oregon' area, [they] have never pleaded that AmSurg was involved in that sort of monopolistic behavior." ECF 45-1, 2. The panel agreed with AmSurg. *Id.* at 3. The panel noted Drs. Yundt and Hadden's antitrust theories were based on the argument that AmSurg's "action in procuring the [BSC Operating Agreement] itself *is the unlawful act*. Thus separate scheming and planning by AmSurg to monopolize certain aspects of medical practice in central Oregon, even if they exist, are not the wellspring of [Drs. Yundt and Hadden's] complaint against AmSurg." *Id.* at 4. The panel concluded the discovery concerning some broad monopolistic scheme "exceed[s] the scope of the present proceeding[.]" *Id.*

After AmSurg prevailed on arguments surrounding the insufficiency of Drs. Yundt and Hadden's pleading of the antitrust claims before the panel, the doctors never sought leave to amend their answer to include their broader antitrust claims from the federal complaint. They also never sought reconsideration from the panel. Instead, they voluntarily abandoned all antitrust claims, even their narrow BSC Operating Agreement antitrust claim.

Drs. Yundt and Hadden confirmed the waiver of their antitrust claims in the parties' April 13, 2016, JHPO. As noted, the JHPO supplanted the pleadings and shaped the course of the arbitration hearing. In the JHPO, Drs. Yundt and Hadden failed to present their antitrust claims, instead including a footnote denoting that their exclusion of the antitrust claims in no way constitutes a waiver of any antitrust claims or defenses. While the doctors may include whatever

9 – OPINION AND ORDER

footnotes they like in briefings before the panel, those footnotes do not somehow confer jurisdiction on this Court over those claims.

The focus of 9 U.S.C. § 10(a)(3) is arbitrator misconduct by a refusal to hear pertinent claims. If a party fails to raise a particular claim before the arbitration panel, it cannot later argue the panel refused to hear that claim. This Court determined that all of the claims—including Drs. Yundt and Hadden's antitrust claims—needed to be raised first to the arbitration panel. Drs. Yundt and Hadden chose to narrow their antitrust claims in arbitration. And after losing the discovery dispute before the panel, the doctors chose to simply abandon those claims altogether. That tactical decision ignored this Court's order that "the arbitrators must determine the arbitrability of the claims of Drs. Yundt and Hadden[.]" November 24, 2015 Opinion, 14.

The panel did not refuse to hear Drs. Yundt and Hadden's antitrust claims. Drs. Yundt and Hadden voluntarily chose to not pursue those claims in arbitration. Drs. Yundt and Hadden's motion for vacatur of the panel's decision under 9 U.S.C. 10(a)(3) is DENIED.

## CONCLUSION

Because the panel did not exceed its authority and did not refuse to hear and consider antitrust claims, plaintiffs' Motion to Vacate is DENIED and defendant's Motion to Confirm is GRANTED.

IT IS SO ORDERED.

DATED this 21st day of December, 2016.

                                                _____/s/ Michael McShane_____
                                                    Michael McShane
                                            United States District Judge